UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS A. MANDARINI, III, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' PENSION FUND,<br>     Plaintiff,<br><br>     v.<br><br>HIGHWAY SAFETY SOLUTIONS, INC. and K5 CORPORATION,<br>     Defendants. | C.A. No. |

## COMPLAINT

Plaintiff, Louis A. Mandarini, III, as he is Executive Director, Massachusetts Laborers' Pension Fund (the "Fund" or "Plaintiff"), avers as follows:

### INTRODUCTION

1. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. Plaintiff seeks a judgment awarding withdrawal liability, interest, liquidated damages, and attorneys' fees and costs incurred by the Fund as a result of Highway Safety Solutions, Inc.'s ("Highway") withdrawal from the Fund, a multiemployer pension plan.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under ERISA §§ 502, 4221, and 4301, 29 U.S.C. §§ 1132, 1401, and 1451. Venue lies in this Court under ERISA §§ 501(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), because inter alia the Fund is administered at its principal place of business located at 1400 District Avenue, Burlington, Massachusetts.

## PARTIES AND BACKGROUND

3. The Massachusetts Laborers' Pension Fund is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "multiemployer plan" within the meaning of ERISA §§ 3(37) and 4001, 29 U.S.C. §§ 1002(37) and 1301. It provides participants with a defined pension benefit. The Fund primarily covers work performed in the building and construction industry within the meaning of ERISA § 4203, 29 U.S.C. § 1383.

4. Louis A. Mandarini, III is the Executive Director of the Massachusetts Laborers' Benefit Funds, which includes the Pension Fund, located at 1400 District Avenue, Burlington, Massachusetts, within this judicial district. Among other things, Mr. Mandarini, as the plan administrator, serves as the collection agent for the Fund and its joint board of Trustees. In this capacity, Mr. Mandarini has authority and control over collecting fund contributions and pursuing withdrawal liability, and is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the plan administrator within the meaning of ERISA §§ 3(16) and 4001, 29 U.S.C §§ 1002(16) and 1301.

5. Defendant Highway is a Massachusetts corporation with a principal place of business at 9 Rockview Way, Rockland, Massachusetts 02370, and is an employer engaged in commerce within the meaning of ERISA §§ 3(5) and (12), 29 U.S.C. §§ 1002(5) and (12), 29 U.S.C. § 152(2). The company primarily performs painting and placement of pavement markings, road signs, and traffic control devices on public highways, streets, and roadways. Kathy Coggeshall Delong and M. Kenneth Horn are Highway's Officers and Directors and own Highway. On information and belief, Ms. Delong and Mr. Horn are married.

6. Defendant K5 Corporation ("K5") is a Massachusetts corporation with a principal place of business at 9 Rockview Way, Rockland, Massachusetts 02370, and is an employer

engaged in commerce within the meaning of ERISA §§ 3(5) and (12), 29 U.S.C. §§ 1002(5) and (12), 29 U.S.C. § 152(2).  The company primarily performs painting and placement of pavement markings, road signs, and traffic control devices on public highways, streets, and roadways.  Ms. Delong is K5's President, Treasurer, Secretary, and a Director of K5.  Ms. Delong and Mr. Horn own K5.  K5 changed its name from Hi-Way Safety Systems, Inc. in June 2020.

7. A copy of this Complaint is being served upon the United States Secretary of Labor, the United States Secretary of the Treasury, and the Pension Benefit Guaranty Corporation by certified mail as required by ERISA §§ 502(h) and 4001(a)(4), 29 U.S.C. §§ 1132(h) and 1301(a)(4).

**FACTUAL ALLEGATIONS**

8. On or about June 20, 2003, Highway signed a Memorandum of Agreement ("MOA"), in which it agreed in writing and in relevant part to be bound to the terms of collective bargaining agreements entered into by the Massachusetts Laborers' District Council (the "Union") on behalf of its local unions, and various contractors and construction associations throughout the Union's territorial jurisdiction, as well as collective bargaining agreements entered into by the Rhode Island Laborers' District Council and the Connecticut Laborers' District Council.  Ms. Delong signed the MOA as President of Highway.  The MOA is attached hereto as Exhibit A.

9. Because of the MOA, Highway became party to the Heavy and Highway Agreement between the Union and the Labor Relations Division of the Construction Industries of Massachusetts, Inc. (the "CBA"), as well as the Rhode Island Statewide Heavy Highway, and Tunnel Agreement between the Rhode Island Laborers' District Council and the Construction Industries of Rhode Island, and the Agreement between the Connecticut Construction Industries

3

Association, Inc. and the Connecticut Laborers' District Council.  All of the Agreements' terms that are relevant to this case are materially the same as those contained in the CBA.  The 2017–2022 CBA is attached hereto as Exhibit B.

10. The CBA requires signatory employers to make benefit contributions to Plaintiff (as well as other Massachusetts Laborers' Benefit Funds) for each hour worked by covered employees ("Laborers") at rates prescribed therein by the twentieth (20th) of the month following the month in which the work was performed.  Plaintiff collects all benefit contributions and dues owed under the CBA.

11. All employers that are delinquent in the payment of contributions are charged interest on the delinquency at the rate of ten percent (10%) per annum, liquidated damages in the amount of twenty percent (20%) of the delinquency, and attorneys' fees and costs to collect the delinquency pursuant to the terms of the CBA and ERISA.

12. Signatory contractors such as Highway are obligated to submit remittance reports each month, on which they list the hours worked by their employees and calculate the amount of contributions due to Plaintiff for all work performed by their employees in a given month.  They are also required to submit to periodic audits of their payroll related records.

13. As a signatory contractor, Highway has access to the "skilled and dependable labor" supplied by the Union.  Id. at p. 8.  It is also able to work for general contractors that are required by their own agreements with the Union to ensure both that the terms and conditions of those agreements, including the payment of contributions to the Fund, apply equally to any subcontracted work and that their subcontractors are signatory to the CBA.  Id. at pp. 10, 37.

**RELATIONSHIP BETWEEN HIGHWAY AND K5**

14. K5 did not sign the MOA binding it to the CBA with the Union, as Highway did.

15. However, according to the Secretary of Commonwealth filings, K5 has its corporate offices and operates out of a location at 9 Rockview Way, Rockland, Massachusetts—the same location as Highway. Exhibit C.

16. At all times relevant hereto, Ms. Delong and Mr. Horn have owned Highway and K5 (collectively, "Defendants" or "the Companies").

17. At all times relevant hereto, Highway and K5 have had the same President, Treasurer, and Secretary, Ms. Delong.

18. Highway and K5 engage in the same business and industry, and perform the same type of work. Highway's Articles of Incorporation list its business as "provision and installation of traffic markings and traffic warning signs." Exhibit D. K5's Annual Report lists its business as "pavement markings company." Exhibit E. Highway's and K5's work involves the painting and placement of pavement markings, road signs, and traffic control devices on public highways, streets, and roadways.

19. Highway's 2019 Annual Report lists "K5 Corporation" as the business of the corporation. Exhibit F.

20. Highway and K5 had Union Member employees and Non-Union Member employees work side-by-side on the same jobs, performing the same Laborers' work. For such work performed by Non-Members, the Companies did not make benefit contributions to the Fund. The Companies only made benefit contributions to the Fund for certain hours worked by Members. The same supervisors supervised both Members and Non-Members.

21. Both companies use the same telephone number as their main telephone number, and share equipment, tools, and vehicles, as well as administrative, managerial, and supervisory staff.  Exhibit G.

22. On or about July 9, 1997, K5, under its former name Hi-Way Safety Systems, Inc., signed a memorandum of agreement, in which it agreed in writing and in relevant part to be bound to the terms of a collective bargaining agreement entered into between the Rhode Island Laborers' District Council and the Construction Industries of Rhode Island, and successor agreements thereto.  Exhibit H.

23. K5 thus is under common control with Highway, and has operated, and continues to operate, as a single employer, alter ego, successor, and otherwise as a continuation of Highway.

## WITHDRAWAL FROM THE FUND

24. By letter dated March 26, 2020, the Union notified Highway of its decision to terminate its collective bargaining agreements with Highway, effective March 30, 2020.  Exhibit I.

25. Since then, K5 has employed and continues to employ Laborers for work of the type for which contributions were previously required and has operated and continues to operate in the jurisdiction of the collective bargaining agreements.

26. K5 is under common control with Highway and has operated and continues to operate as a single employer, alter ego, successor, and otherwise as a continuation of Highway.

27. The Fund assessed Highway and K5's withdrawal liability at $259,781.00 pursuant to ERISA §§ 4201, 4203, and 4211, inter alia.

28. Multiemployer pension plans use withdrawal liability amounts to fund an employer's share of unfunded vested benefits for participants and beneficiaries. Such amounts, therefore, play a critical role in keeping such pension plans solvent and providing critical benefits to workers and their families.

29. On January 7, 2021[1], K5 and Highway received a Notice and Demand Letter (the "Demand Letter") by certified mail from the Fund for withdrawal liability pursuant to ERISA §§ 4202 and 4219, inter alia. Among other things, the Demand Letter notified K5 and Highway that the Fund had assessed the Companies' withdrawal liability at $259,781.00, which amount could be satisfied either by a lump sum payment or by 23 quarterly payments. The Demand Letter indicated that the Companies' first payment was due on March 8, 2021. The Demand Letter made thirty-four requests for information and documents pursuant to ERISA § 4219. The Demand Letter also indicated that K5 and Highway must timely initiate arbitration to contest the withdrawal liability assessed by the Fund, and must begin making payments to the Fund regardless of whether it contested. The Demand letter indicated that if the Companies failed to exercise their right to arbitrate within the timelines provided, they would waive that right. The Demand Letter also indicated that companies under common control, and/or having a successor, alter ego, or single employer relationship would be treated as employers for the purposes of withdrawal liability and would be held jointly and severally liable. The Demand Letter is attached hereto as Exhibit J.

30. By email on January 7, 2021, the Companies' counsel stated it would review the Demand Letter with K5 and Highway.

---

[1] Although sent in 2021, the Demand Letter is dated 2020, due to a clerical error. In any event, the Fund mailed the Letter via certified mail to K5 and Highway on January 5, 2021. K5 and Highway's counsel received the Demand Letter by email on January 5, 2021.

31. On January 25, 2021, the Companies' counsel requested a copy of the withdrawal liability calculations underlying the $259,781.00 Demand amount.

32. By email on January 27, 2021, the Fund's counsel responded to the Companies' request and provided a copy of the withdrawal liability calculation to the Companies' counsel. Exhibit K.[2]

33. By email on March 19, 2021, the Companies' counsel requested the identities of the employees whose hours were used in the withdrawal liability calculation.

34. By email on March 29, 2021, the Fund's counsel responded to K5 and Highway's request and provided copies of Highway's pension fund reports, which included the identities of the employees considered in the withdrawal liability calculation. Exhibit L.[3]

35. The Fund has received no response from K5 and Highway following the email on March 29, 2021.

36. K5 and Highway did not provide any information or documentation in response to the Demand Letter.

37. The Companies did not make any withdrawal liability payments.

38. K5 and Highway's 90-day deadline from receipt of the Demand Letter to request a review of the withdrawal liability assessment or initiate arbitration expired on April 7, 2021. ERISA §§ 4219 and 4221.

39. K5 and Highway did not request a review of the withdrawal liability assessment.

40. The Companies did not initiate arbitration.

41. In the alternative, even if K5 and Highway's email requests for information could be considered a request for review (which they are not), the 60-day deadline to initiate arbitration

---

[2] Redactions per FRE 408.
[3] Redactions per FRE 408.

expired March 28, 2021—60 days after the Fund's January 27, 2021 response to the Companies' request.  ERISA § 4221(a)(1).

42. Defendants did not initiate arbitration of the withdrawal liability assessment within the time period specified in ERISA §§ 4219 and 4221 and are now precluded from doing so.

43. To date, Defendants have not made any withdrawal liability payments, as required under inter alia ERISA §§ 4219 and 4221.

44. As a result of their failure to timely cure the withdrawal liability payment delinquencies, Defendants are in default within the meaning of ERISA § 4219, and the entire withdrawal liability amount is now due and owing.

45. ERISA § 4301 provides that the failure to make withdrawal liability payments when due shall be treated as delinquent contributions under ERISA § 515.

## COUNT I - VIOLATION OF ERISA – CONTROL GROUP

46. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 45 above.

47. K5 is a trade and business under "common control" with Highway within the meaning of ERISA § 4001.

48. K5 is jointly and severally liable with Highway.

49. K5 continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required after Highway's agreements with the Union were terminated and its obligation to contribute to the Fund ceased, and the Defendants thus incurred withdrawal liability within the meaning of inter alia ERISA § 4203 in the amount of $259,781.00 plus interest.

50. On January 7, 2021, K5 and Highway received the Demand Letter from the Fund for withdrawal liability pursuant to ERISA §§ 4202 and 4219 inter alia, in the amount of $259,781.00 plus interest.

51. Defendants did not initiate arbitration of the withdrawal liability assessment within the required time period.

52. Defendants' failure to make any of the withdrawal liability payments, which are due and owing, violates ERISA § 515.

53. Defendants are now in default and owe the entire balance of the withdrawal liability, plus interest, attorneys' fees and costs, and liquidated damages.

## COUNT II - VIOLATION OF ERISA – ALTER EGO

54. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 53 above.

55. K5 is an alter ego of Highway.

56. K5 is jointly and severally liable with Highway.

57. K5 continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required after Highway's agreements with the Union were terminated and its obligation to contribute to the Fund ceased, and the Defendants thus incurred withdrawal liability within the meaning of inter alia ERISA § 4203 in the amount of $259,781.00 plus interest.

58. On January 7, 2021, K5 and Highway received the Demand Letter from the Fund for withdrawal liability pursuant to ERISA §§ 4202 and 4219 inter alia, in the amount of $259,781.00 plus interest.

59. Defendants did not initiate arbitration of the withdrawal liability assessment within the required time period.

60. Defendants' failure to make any of the withdrawal liability payments which are due and owing violates ERISA § 515.

61. Defendants are now in default and owe the entire balance of the withdrawal liability, plus interest, attorneys' fees and costs, and liquidated damages.

## COUNT III - VIOLATION OF ERISA – SINGLE EMPLOYER

62. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 61 above.

63. K5 is a single employer with Highway.

64. K5 is jointly and severally liable with Highway.

65. K5 continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required after Highway's agreements with the Union were terminated and its obligation to contribute to the Fund ceased, and the Defendants thus incurred withdrawal liability within the meaning of inter alia ERISA § 4203 in the amount of $259,781.00 plus interest.

66. On January 7, 2021, K5 and Highway received the Demand Letter from the Fund for withdrawal liability pursuant to ERISA §§ 4202 and 4219 inter alia, in the amount of $259,781.00 plus interest.

67. Defendants did not initiate arbitration of the withdrawal liability assessment within the required time period.

68. Defendants' failure to make any of the withdrawal liability payments which are due and owing violates ERISA § 515.

69. Defendants are now in default and owe the entire balance of the withdrawal liability, plus interest, attorneys' fees and costs, and liquidated damages.

### COUNT IV – VIOLATION OF ERISA – SUCCESSOR EMPLOYER

70. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 69 above.

71. K5 is a successor employer to Highway.

72. K5 is jointly and severally liable with Highway.

73. K5 continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required after Highway's agreements with the Union were terminated and its obligation to contribute to the Fund ceased, and the Defendants thus incurred withdrawal liability within the meaning of inter alia ERISA § 4203 in the amount of $259,781.00 plus interest.

74. On January 7, 2021, K5 and Highway received the Demand Letter from the Fund for withdrawal liability pursuant to ERISA §§ 4202 and 4219 inter alia, in the amount of $259,781.00 plus interest.

75. Defendants did not initiate arbitration of the withdrawal liability assessment within the required time period.

76. Defendants' failure to make any of the withdrawal liability payments which are due and owing violates ERISA § 515.

77. Defendants are now in default and owe the entire balance of the withdrawal liability, plus interest, attorneys' fees and costs, and liquidated damages.

**WHEREFORE**, Plaintiff requests this Court grant the following relief:

a. Judgment in favor of the Fund on Count I in the amount of $259,781.00 plus interest at a rate of 10 percent per annum, liquidated damages in the amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, attorneys' fees, and costs, pursuant to inter alia ERISA § 502(g);

b. Judgment in favor of the Fund on Count II in the amount of $259,781.00 plus interest at a rate of 10 percent per annum, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, attorneys' fees, and costs, pursuant to inter alia ERISA § 502(g);

c. Judgment in favor of the Fund on Count III in the amount of $259,781.00 plus interest at a rate of 10 percent per annum, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, attorneys' fees, and costs, pursuant to inter alia ERISA § 502(g);

d. Judgment in favor of the Fund on Count IV in the amount of $259,781.00 plus interest at a rate of 10 percent per annum, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, attorneys' fees, and costs, pursuant to inter alia ERISA § 502(g);

e. Attachment and injunction of Defendants' assets, including their equipment and vehicles, material and other inventory, bank accounts and accounts receivable, and any other assets;

f. Preliminary and permanent injunction enjoining Defendants from refusing or failing to pay the amounts due and owing; and

g. Such further relief as this Court deems just and appropriate.

Respectfully submitted,

Louis A. Mandarini, III, as he is Executive Director, Massachusetts Laborers' Pension Fund,

By his Attorneys,

/s/ Nathan P. Goldstein
Nathan P. Goldstein, BBO No. 666101
Sasha N. Gillin, BBO No. 690769
Sophie C. Esquier, BBO No. 698875
Segal Roitman, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
(617) 742-0208, Ext. 253
ngoldstein@segalroitman.com
sgillin@segalroitman.com
sesquier@segalroitman.com

Dated: May 26, 2021